IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DENISE BYRNE VEVE; ROBERT BYRNE VEVE<br>Plaintiffs<br>vs<br>OFG BANCORP.<br>Defendant | CIVIL 14-1601CCC |

## OPINION AND ORDER

    This is a diversity action for damages arising from the alleged mismanagement by defendant OFG Bancorp (OFG)[1] of two separate investment accounts belonging to each of the two plaintiffs' parents. Before the Court now is the Motion to Dismiss filed by defendant OFG on May 26, 2015 (D.E. 15) and plaintiffs' response filed on June 13, 2015 (D.E. 18).

    The core facts, taken from the complaint, follow. Robert Byrne (Byrne) and his wife, María del Pilar Veve de Byrne, each had separate investment accounts with Banco Bilbao Vizcaya Argentaria of Puerto Rico (BBVA) for decades. The couple had three children: Denise Byrne-Veve (Denise), Robert Byrne-Veve (Robert) and Mary Ann Byrne-Veve (Mary Ann). Only Denise, who is a resident of Virginia and Robert, who resides in Florida, are plaintiffs in this action; Mary Ann did not join her two siblings as a party. In 2013, defendant OFG acquired BBVA. Both under BBVA and OFG, Rubén Fernández-Masías (Fernández) served as broker for both investment accounts.

---

    [1]Defendant has averred in both its Answer to Complaint (D.E. 11) and in the Motion to Dismiss that its correct name is Oriental Financial Services, Corp. (OFS). For ease of reference, however, we will refer to it with the acronym used in the Complaint, i.e. OFG.

CIVIL 14-1601CCC                           2

    Ms. Veve de Byrne died in February of 2010.  Plaintiffs allege that after her death, Fernández requested Denise to bring him a certified copy of her mother's will, which she delivered to his assistant.  Although Ms. Veve de Byrne's will purportedly provided that one third of her estate was bequeathed to her husband and the other two thirds to her three children, OFG transferred her investment account solely to her husband Byrne.  It is further alleged that Ms. Veve de Byrne's account had a balance of approximately $80,000.00 at the time it was transferred to Byrne's, which were all invested in Oppenheimer Funds mutual funds.  Byrne's separate personal account had a balance of $17,000.00.

    In April 2013, Fernández called Byrne at his residence and asked him to come to his office to discuss his investments.  Byrne was taken to Fernández' office the following day by his gardener, Cheo.  Once at the office, Fernández convinced Byrne to sell the positions formerly in his wife's account and which were invested in the Oppenheimer Funds, as well as the positions in his own account, in order to buy AAA Puerto Rico bonds.  Fernández told Byrne that this new investment would produce higher yields and more income, a representation that the broker knew was false since by April 2013 Puerto Rico government bonds had been downgraded to junk status.  Fernández did not seek the consent of any of Byrne's children - Mary Ann and plaintiffs Denise and Robert- before selling the positions in their mother's former account which were invested in the Oppenheimer Funds or the positions which Byrne had in his original personal account.   Fernández allegedly made these recommendations to Byrne because another of his clients wanted to sell his AAA Puerto Rico bonds.

CIVIL 14-1601CCC                             3

    Mary Ann first learned of the transfer of the monies in her father's accounts to the Puerto Rico bond funds when she reviewed the accounts in June 2013.  Upon noticing that the balance in the accounts had dropped from $97,553.00 to $58,896.00, she asked her father what he had done and he responded that he had just signed documents that Fernández asked him to sign after being told that it would be better for him.  Mary Ann visited Fernández at his office to complain about the unsuitability of the transactions made on her father's accounts given his age and financial situation, but Fernández responded that Byrne had reached a decision assisted by his "financial advisor" Cheo (the gardener), who had accompanied him at the meeting they had in April.  Mary Ann reminded Fernández that Cheo was not a financial adviser, and asked him to return her father's investments to their former state.  Fernández refused, and told Mary Ann that she had no standing to complain because her name was not on the accounts.  After Fernández rejected Mary Ann's plead to revert the transactions, her husband César Montilla (Montilla), who also works in the financial services industry, met with officials from OFG in September 2013 and asked them to investigate the situation. Although a couple of officials allegedly agreed to look into the matter, no one from OFG ever responded to Montilla's claim, which he later reasserted in writing and followed-up with a complaint before Puerto Rico's Commissioner for Financial Institutions.

    Plaintiffs Denise and Robert brought this action seeking that the portion of the money in her mother's account which they inherited upon her passing, and which OFG transferred to their father, be returned to them.  They also seek damages for the emotional anguish both allegedly suffered as a result of

CIVIL 14-1601CCC                    4

seeing their father being humiliated by defendant when he was allegedly deceived to invest into risky bonds.

OFG has moved for dismissal claiming that the Court lacks jurisdiction to entertain plaintiff's claim because the parties are bound to submit to arbitration all of the controversies related to the investment accounts in question.  It also asserts that indispensable parties, namely Mary Ann and Byrne, are missing from the action and their joinder would defeat diversity jurisdiction.  Finally, it avers that the claims are time barred. Because we find that plaintiffs' claims related to her mother's investment account must be arbitrated, and that their tort claims for the emotional anguish allegedly suffered as a result of their father's deceit by OFG are time barred, we now GRANT defendant's dismissal motion.

**Arbitration**:

It is clearly established that "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3rd Cir. 2013).  Here, plaintiffs claim for the return of the money invested in her mother's OFG brokerage account is squarely anchored on the contractual terms and conditions under which said account was established, which as defendant has emphasized included an arbitration agreement.  A review of said arbitration provisions contained in the New Account Form signed by Ms. Veve de Byrne on February 3, 2010 and which is Exhibit I to defendant's motion (D.E. 15-1) shows that Ms. Veve de Byrne agreed that all controversies related to her account "be submitted to arbitration

CIVIL 14-1601CCC                               5

before the New York Stock Exchange, Inc., any other national securities exchange on which a transaction giving rise to the claim took place (and only before such exchange), or the financial industry regulatory authority." ¶ 14. Ms. Veve de Byrne further acknowledged that by signing the arbitration agreement "all parties to this agreement are giving up the right to sue each other in court . . ." ¶ 13.  She further contracted that the agreement and its provisions "shall be continuous, and <u>shall</u> . . . <u>be binding upon</u> me and/or <u>the estate</u>, executors, administrators, and assigns <u>of my account</u>." ¶ 4 (emphasis ours).  Hence, plaintiffs' claims that the title of her mother's account should have been transferred to them and their sister as legitimate heirs of Ms. Veve de Byrne, instead of to their father, and that the monies invested therein at the time of the improper transfer be now returned to them, are directly related to the management of said investment account and subject to its arbitration provisions.

The Supreme Court has explained that the Federal Arbitration Act (FAA) "not only declared a national policy favoring arbitration, but actually withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. " <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 115 S.Ct. 1212, 1215–16 (1995).  Puerto Rico law and its jurisprudence are in sync with this national policy, as they also strongly favor arbitration.  <u>See</u> Puerto Rico Arbitration Act, 32 L.P.R.A. § 3201 et. seq.; <u>S.L.G. Méndez-Acevedo v. Nieves-Rivera</u>, 179 D.P.R. 359, 368 (010); <u>U.C.P.R. v. Triangle Engineering Corp., Inc.</u>, 136 D.P.R. 133, 141–143 (1994), <u>Quiñones v. Asociación</u>, 161 D.P.R. 668, 673 (2004); <u>PaineWebber, Inc. v. Soc. de Gananciales</u>, 151 D.P.R. 307, 312–313 (2000); <u>McGregor-Doniger v. Tribunal Superior</u>, 98 D.P.R. 864, 869 (1970).

CIVIL 14-1601CCC                 6

Given the arbitration clause contained in Ms. Veve de Byrne's brokerage account agreement, which binds her children as members of her estate, plaintiffs' claim seeking the return of the money invested in her account at the time of her death is DISMISSED, without prejudice.

**Prescription**:

Plaintiffs' remaining claim is brought under Puerto Rico's tort statute, Article 1802 of the Civil Code, and is based on the emotional anguish they both aver to have suffered upon seeing their father's humiliation when OFG allegedly deceived Byrne to transfer his investments from safe mutual funds to risky Puerto Rico bonds.  The complaint's allegations in this regard are rather sketchy, but do state that Mary Ann first learned of this transfer in June 2013, when she was reviewing her father's accounts, and then asked Byrne what he had done.  That triggered an attempt by Mary Ann, her husband and the two plaintiffs to correct the situation, which was ultimately rejected by OFG.  While no exact date is provided in the complaint of when plaintiffs started to endure the anguish provoked by their father's plight upon his realization that he was deceived to invest in failed funds, it may be reasonably inferred that Byrne's tribulations started when he was confronted by Mary Ann in June 2013 with the transfers in his account which allegedly were deceitfully induced by his broker. The complaint seeking damages for plaintiff's emotional anguish was not filed until August 4, 2014, however.  Claims under Article 1802 have a one-year limitations period (see 31 L.P.R.A. § 5298(2)), which begins to run from the time the victim knew or should have known of the claimed injury. Colón–Prieto v. Geigel, 115 D.P.R. 232 (1984).  Whether plaintiffs continued to suffer the harmful effects of their father's humiliation, which took place outside the limitations period, within the limitations period, does not serve to toll the statute

CIVIL 14-1601CCC                              7

of limitations.  See Lazarini v. United States, 898 F.Supp. 40, 45 (D.P.R. 1995) (stating that "in order to establish a continuing tort violation, a plaintiff necessarily must prove a series of events, not that the injury from the first events has not been cured.").

We need go no further.  For the reasons stated, OFG's Motion to Dismiss (**D.E. 15**) is GRANTED and both of plaintiffs' claims are ORDERED DISMISSED.  Judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on March 29, 2016.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge